Richard Dvorak, D.V.O.R.A.K. Michael Schmidty, S.C.H.M.I.E.G. Good morning, I'm Assistant State's Attorney Nancy Colletti. And you want some time for rebuttal? Five minutes. Okay. Thank you. Let's proceed. If it may please the court, counsel. Your Honor, we have two issues in this case. They both are under the rubric of ineffective assistance of counsel. But they also alternatively are plain error because none of the errors were objected to at trial. I think in essence it's the same ultimate standard. I think you have to show prejudice. And I don't see any appreciable difference between the two standards. I think it can be evaluated either way. First with regard to the alibi hearsay evidence. In this case, I mean, I think clearly the alibi evidence was offered for the truth of the matter. I believe the state has argued that, well, it's just to show their course of investigation. I think there's two issues with that. One is it really was not the course of the investigation. It wasn't limited. It wasn't necessary to show how and why they came up with Mr. Stanley. But more importantly, I think the more problematic part of that is that this was indeed offered for the truth of the matter. The whole point of it was to show. It was the truth of the matter asserted. The truth of the matter. The person was whoever the alibi is. Exactly. Exactly, Your Honor. And the second part of that is not always an offer of the truth of the matter, that they in fact had alibis and they were someplace else during the crime, but that I, the detective, a witness, have vouched for them. I think that there was a credible alibi and, therefore, I didn't pursue any further avenues. There was one very solid alternative suspect here, Gerald Waterdale. He was friends with this person named Gucci, who was sort of like the known instigator, leader of this whole thing. He was seen getting into a dark van that night with others. He was identified as a shooter by one of the state's own witnesses, Tawanda Sterling, and the detective essentially eliminated him as a suspect in one fell swoop by summarizing that his alibi checked out. Clearly, he's a- Did he stand in line and say he wasn't identified? Well, he was identified by one person, yes. Who said that he just knew Gucci, that he wasn't in the car and wasn't a shooter? I'm sorry, you're talking about Gucci or you're talking about- I can't think of the guy's name. The alternative suspect, Charles Waterdale? Yeah. Or Gucci, the sort of ringleader? Yeah, it wasn't, maybe I'm getting my facts wrong, but didn't they say the person identified, was it, I think it's the female girlfriend of the defendant? Yes. All right. Well, she identified him, but she didn't say he was a shooter. She said he called with, I can't think of the guy's name. I do agree, Your Honor. I think I was a little confused of which one you were talking about. I think you're talking about the girlfriend of- Andre Turner. Andre Turner. Her name just came to me right now, too. Testifying that she identified Gucci, but not with any kind of particularity. But clearly, the implication is Gucci was the leader of this faction. He had, Mr. Turner had an argument with Gucci about not selling drugs in his territory. They thought they had a come together of, well, agreed not to sell drugs. That's always Gargamel. I'm sorry, yes, Gargamel. Okay, right. Now we're at a response that, you know, with a million kids, you've got to get your facts straight. You're right, Your Honor. That is Gargamel, yes. But clearly, Gucci was one of these four members, and Gucci was considered a possible suspect in this case as well. Okay. I have a question with regards to the officer's testimony. All right. So it's clear that officers can testify as to their conduct in the course of the investigation, right? Yes. So why isn't the officer's testimony here exactly that? It was an alibi. We checked it out. We verified that it was a good alibi. Why isn't that within the course of the investigation and the conduct that they were showing, what they were doing during the course of the investigation, proves that I got an alibi, I checked it out, it's good? Well, because, Your Honor, the course of the investigation is an exception, you're saying. So it is by definition not offered for the truth of the matter. In this case, clearly, it was offered for the truth of the matter. How? How? Because what the detective is saying is, in fact, this is a fact, jury, you can believe me, I checked out their alibis, and they were fine. So why isn't that within the course of their investigation? We got an alibi, right? We got to make sure that this is a legitimate alibi, that it stands up, right? So why isn't that within the course of the investigation? Because just because something's within the course of an investigation doesn't mean it comes in automatically as non-hearsay. I mean, everything involved in a criminal case is within the course of an investigation, yet it doesn't come in as a course of investigation. To come in as a course of investigation, it has to specifically not be for the truth of the matter, and if they are going to do it, it has to be limited, it has to be necessary, and there should be a ruling instruction. So why isn't this necessary? I'm sorry, why wasn't this necessary? I mean, you got somebody on, I mean, it's not even a mistake. You didn't show up to the court that testifies to his alibi. This is coming from the office, right? I don't think it was necessary. But I'm just saying, though, so why isn't it necessary to say we had an alibi, we checked it out, it stands up, and that was my investigation? Okay, because essentially had there not been an alibi defense in this case, the state would not have introduced it. I'm confident of that, okay? So what they're trying to do is trying to anticipate the defense, before it's even been presented, by the way, now in rebuttal evidence. And what they're trying to do is rebut it affirmatively, truth of the matter, to essentially eliminate their alibi defense proactively. And I think that's improper. Can I ask, I hate to interrupt you, but let's assume, for the sake of argument, that it was hearsay, that it was offered for the truth of the matter asserted.  This is how, Your Honor, because every time that you have an alibi defense, you're necessarily saying that someone else did it. It wasn't me, someone else did it, unless you're saying there was no crime at all. So to the extent that you can show the jury, hey, this guy probably did it, or this guy probably did it, there's a good chance this guy probably did it, that increases your chances of winning because it increases reasonable doubt. If there's any other questions, I'd like to move on to the closing argument. Yeah, I just have one major thing. Your contention is that your client was prejudiced. But isn't the evidence kind of overwhelming that he's a shooter? Didn't two people at least pick him out as a shooter? Two people did. First of all, there was no physical evidence, no admissions. And in that case, the period of time... Is there something out there that says that? No, Your Honor, for the reasonable doubt standard. But this is not the reasonable doubt standard. This is the closest of the evidence standard. This is somebody that they saw him in the car, two people saw him as the shooter, and he is saying, well, no, I'm not in the car. Okay. I can attack those two witnesses if you'd like. Not attack. Who was the shooter? Okay. So here's the situation. So the two people who identified him as a shooter, one was Andre Turner. Andre Turner obviously has a motive to testify falsely. But more importantly... I don't know why. Wait, I just heard you say he had a motive to testify falsely. Why would he have a motive to identify someone else as killing his 9-year-old daughter? Because he had a beef with the same rival faction that the defendant is in. Then why didn't he pick Gardner out? That's the person he had the argument with. And I think did he have a fight with Henderson? Well, because... Because I'm getting these facts right in my head here. This actually goes into my second part of the argument, Your Honor, and I'm not trying to avoid that. I'll get to that in a second, is he didn't know who shot, who did the shooting on the day of the shooting. He, in fact, said to the detectives that very night that he did not know who the shooter was. It wasn't until a month later that he comes up with the shooter. By that time, the name Kevo, Kevin Stanley, had come into it. Now, okay, I'll go with that. Kevo came out the very first day out of the mouth of his girlfriend while he's in the hospital and he's talking to the doctor. So that name, I mean, that was the first name that the police get within probably less than an hour of the child getting shot and him getting shot. And that's the second part, Your Honor. The second witness, the person who says Kevo, she admitted that it was a hurried shot, she didn't have a good view, and she admitted to the grand jury, she testified that there was a big tree in the way. So clearly she does not have a very good view of what's happening. Second of all, the state argues, well, she knew this person. Well, the Lerma case from the Illinois Supreme Court makes it very clear that just because you know someone does not mean you cannot have a mistaken identification. So what we have here is a mistaken identification of one single witness who had a very poor view that gets turned into a second witness, Andre Turner, a month later, who goes from I didn't know who the shooter was to all of a sudden now I have the shooter. So generally the Pietowski case from the Illinois Supreme Court says that if it's only a witness eyewitness identification and no other evidence, it's generally considered closely balanced. So I think it is closely balanced. Moving on to the closing argument. Your Honor, I cited the Blue case, the Johnson case, and various other cases that talk about these closing argument issues. I think they're all very analogous. Oh, God, I'm sorry I had to say that. I'm sorry? I said Blue is nothing like this case. Blue is the worst case I've ever read in my entire life. It has every error that a prosecutor could possibly make in it, including having the officer's bloody clothes displayed throughout the trial in front of a jury. It's nothing like Blue, so please don't make it analogous to Blue because you lose credibility when you say something like that. Your Honor, what I'm talking about is the exact argument about the family needs to hear from you in Blue with the family needs to hear from you here. There's no the family needs to hear from you in this case. Your Honor, the other comments were that they need to put an end to it, they need to stop the gang war. That's clearly trying to put an end to crime in general. Drug war is the same thing. Case law says you can't do that. The part about talking about the victim being in a graveyard and a shiny stone and she's going to pop out of a screen, those are just outrageous arguments. The part about criticizing defense counsel for having twisted and disgusting defenses, for deflecting, for having disingenuous defenses, for saying they want the perfect case and the perfect case is to have the defendant go free. And to talk about in law school, everyone knows, jury, everyone knows, the judges know here, the prosecutors know, defense attorneys know here, everyone knows when you don't have the facts on your side, you don't have the law on your side, you just argue and you blab. I mean, that is essentially telling a jury what an entire jurisprudence of law states, when there's absolutely nothing in the record that would support that. I've never heard of that in my life. It's really an outrageous comment. Talking about them being criminals. No, no, we talk about outrageous, you talk about an alibi witness, and if I recall, this alibi witness didn't even know the date of the party. Well, exactly, your honor. If he didn't know the date of the party, what kind of alibi is that? Well, because all he knows, your honor, is that it occurred on the date that the girl was shot. Does he know off the top of his head what date that was? Would a good defense attorney have reminded him of the date before putting him in the stand? Sure. But essentially, his argument is the same. We had a party the day that the girl was shot. And then it was used against them, saying, oh, we're trying to use her death to support our alibi. And I think that now any time a witness is going to say that it happened the day of the murder, then all of a sudden they're using the murder. Your honor, they didn't know the day of the week? Your honor, he did not know the day of the week. But, again, what does that have to do with the outrageous arguments? It's determining whether it's a $2 bill or a $3 bill. But, your honor, he didn't get ahead. Had the prosecutor said statements like your honor just did about he didn't know the day of the week and he didn't know the date and, therefore, he's incredible? No problem with that whatsoever. But he said it's a sick and twisted, disgusting thing that they're doing is using her death to try to refresh their memory about what had happened. And that's just a really improper argument. It can be an argument that can be made in every single criminal case. And I don't think we can allow that. And then, finally, what case would say that that's an improper argument? That using the talking about you shouldn't, well, are you talking about the specific comment about whether or not using the victim's death as sort of your memory tool as to when it happened and how that's disgusting and tricky? Your honor, that in general. It's not independent identification when you use the death of somebody to refresh their recollection as to a day. Your honor, that goes to, A, inflaming the passions of the jury, and, B, a disparagement of defense counsel because it was applied to both of them, saying that they're using that date to refresh their memory. Honestly, that happens in every single case. You can remember the date of the murder. I know it wasn't said the way you're saying it. And certainly the way it's said in context matters. But even if that one isolated statement, if we found that one isolated statement, that sounds like that's the one you think is the most egregious, does one error require reversal in a closing argument? I've never seen a case that had closing arguments with these kinds of arguments that was ever reversed because of prosecutorial misconduct. Your honor, by no means do I say the argument I just made was the most outrageous. By no means. Because we quoted exactly the closing argument that was made in blue, and I know your honor does not want to talk about the blue case. Yes, because it's impossible to compare it with anything that's happened to us. Because that particular argument was, I think, the most outrageous. But we identified eight that were outrageous. It's hard to really compare which one was the most outrageous. We identified at least eight of these arguments that were outrageous. And then finally, your honor, the real alibi comment that the prosecutor said that the defense did not put out a real alibi because it was only testimony. Now, there's no basis in law for that. Anyone can present an alibi. It does not have to be record-based, and probably the majority of them are not record-based. And, oh, by the way, the ones alibis that the detectives said were so credible, none of them were record-based. So are we going to now allow prosecutors to say that the only real alibi is one that involves records? That's an outrageous statement of the law. And then they also misstated the facts by saying that there were four witnesses who identified the defendant when it really was only two. With that, your honor, unless there's any other questions, I'd save the rest of my time for rebuttal. Good morning, your honors. Good morning. With respect to the first issue, the defendant has failed to establish that he was denied effective assistance of counsel. The two witnesses, the two police officers who testified, were testifying properly about the course of their investigation. This was not improper testimony, and defense counsel, therefore, was not incompetent in any way for choosing not to object to that admissible testimony. Secondly, even if any argument could be made that either of those police officers' testimony was somehow improper, defendant has failed to establish the prejudice under Strickland. There is not a reasonable probability that the outcome of this trial would have changed had the defense counsel objected to these comments and the objections been sustained. The evidence, as was discussed during counsel's remarks, was indeed overwhelming in this case. You had two witnesses who were there while this was occurring, while the game pulled up with its door open and opened fire on this group of people. Importantly, Denise Robertson, who named the defendant Keddo, was immediately to police. She had identified him in a photo array within hours of this happening, has no connection whatsoever. She's a neighbor from down the street. She's not a girlfriend of the victim, of Andre Turner, not related to him in any way. So with regard to the first issue, the defendant has completely failed to sustain his burden under Strickland. If you don't have any questions on that, I'll move on to the second issue. With regard to the second issue, it's the same set of circumstances. The defendant is arguing that he was denied the effective assistance of counsel because his counsel chose not to make objections to various comments during closing argument. As we have outlined in our brief, all of those comments were within the bounds of proper closing argument, and it was not on professional assistance for his counsel to have not objected to those comments. He put forth an alibi defense in this case. With the comments regarding the situation that happened, the circumstances of the crime, the seriousness of this crime, urging the jurors to fearlessly administer the law, it is incredible to me that defense counsel would have wanted to object to any of those comments. In fact, in his own closing arguments, he acknowledged what a terrible case this was, with terrible facts that a nine-year-old child was shot down as she's out trying to wash her dog on her driveway. And it was, you know, at best, it was reasonable trial strategy that he didn't want to appear, but the defense was unfeeling as well under these circumstances and objected to comments about the serious nature of these crimes. With regard to the second component of Strickland, as with the first issue, the defendant has failed to establish that there is a reasonable probability that the outcome of this trial would have differed had any of these remarks not been made. Based on the strong evidence of the defendant's guilt, which included two eyewitnesses, two line-of-identifications of him, and he has failed to meet his burden under Strickland with regard to that. Based on all of this and everything in our brief, we would ask that you affirm the defendant's conviction. Any questions? Thank you, Your Honor. Based on that, I have no further comment. Okay. Well, thank you very much. You gave us a very interesting case, and you guys did a good job. And we'll take the case under advisement. The court will be adjourned.